UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

NICOLA DORRIS,

    Plaintiff,

v.                                      CASE NO. 5:19-cv-180-MCR-MJF

WALMART, INC.,

    Defendant.
_____/

## ORDER

Plaintiff Nicola Dorris filed suit against her former employer, Defendant Walmart, Inc. ("Walmart"), after she was terminated for unexcused absences, alleging claims of interference and retaliation under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.*[1] Now pending is Walmart's Motion for Summary Judgment. ECF No. 33. Having fully considered the parties' arguments and the record, the Court finds that the motion is due to be granted.

---

[1] Dorris brought suit in state court, and Walmart removed the case to federal court based on federal question jurisdiction. *See* 28 U.S.C. § 1331.

I. **Background**[2]

Dorris began her employment with Walmart in 1988 in the accounting office at Sam's Club in Tallahassee, Florida. Over the next 25 years, she worked at various Walmart locations in Florida and Alabama in the accounting office, and later as a claims supervisor. She transferred to Store No. 3119 in Panama City, Florida in February 2013, and was promoted to Department Manager shortly thereafter. Dorris stated by affidavit that in 2015, she was diagnosed with a chronic insulin resistance condition, which causes immunodeficiency, exacerbates common illnesses, and requires her to seek medical treatment approximately twice each year. On March 16, 2017, Walmart terminated Dorris's employment due to excessive absenteeism after she accumulated nine unexcused absences.

Pursuant to Walmart's attendance policy, an employee is subject to termination for nine or more "occurrences" in a rolling six-month period. *See* ECF No. 31-30 at 2. Each unauthorized absence is an "occurrence," whereas an authorized absence, such as an approved leave of absence, does not count as an occurrence. *See id.* Employees are required to call in and report an absence on Walmart's Interactive Voice Response (IVR) phone system, but this does not excuse

---

[2] For the limited purpose of this summary judgment proceeding, the Court views "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party," which in this case is the Plaintiff. *Martin v. Brevard County Pub. Sch.*, 543 F.3d 1261, 1265 (11th Cir. 2008) (internal marks omitted).

an absence; the absence from a shift is nonetheless considered unauthorized if the employee was scheduled to work that day and did not show up. ECF No. 31-2 at 18-23 (Depo. Regina Hosey, Market HR Manager). Dorris acknowledged that she was aware of the policy allowing termination for nine occurrences. *See* ECF No. 31-21 at 24-26.[3]

Pursuant to Walmart's FMLA policy, FMLA leave requests must be made on Walmartone.com or by phone to Sedgwick (Walmart's third-party leave administrator, and Sedgwick determines FMLA eligibility. ECF No. 31-5. This policy explains that an FMLA leave of absence may be taken on a continuous or intermittent basis, defining each and including that intermittent FMLA leave may be taken if an employee "cannot perform the essential functions of [her] position because of a chronic serious health condition." *See id.* at 1-2. If Sedgwick determines that an employee could be eligible for FMLA leave, it issues a Notice of Eligibility and Rights & Responsibilities and provides the employee with the appropriate certification form(s) needed to fully evaluate the leave request. The employee must return the completed certification forms to Sedgwick by a date

---

[3] During her deposition, Dorris testified that she knew the attendance and punctuality policy and understood that termination could occur for "up to nine" occurrences. ECF No. 31-21 at 24 (answering, "I knew it"). She also testified that she would keep track of how many she had accrued by asking the personnel department, *id.* She also once answered "no" when asked if she was "familiar" with the attendance and punctuality policy, *id.* at 25. This dispute is immaterial to Dorris's claims.

certain, typically within 20 days of receiving the Notice of Eligibility. All employees are informed of this policy and FMLA leave request process. Walmart produced records showing that throughout her employment, Dorris had passed or otherwise completed several hundred computer based training modules on various Walmart policies and procedures, including the FMLA leave policy. Walmart produced employee training records showing that at least one FMLA training module during Dorris's employment discussed examples of the types of serious injuries or illness, or continuing treatments, that would qualify for FMLA leave. *See* ECF No. 31-3 at 25-49.

It is undisputed that Dorris was absent due to illness on nine occasions within a six-month period: October 7, 2016; October 14, 2016; November 28-29, 2016; January 19, 2017; January 23, 2017; February 10, 2017; and March 13-14, 2017. Each time, Dorris had called in sick on Walmart's IVR phone system, but she did not seek FMLA leave for these absences. Dorris claims that her FMLA rights were first violated on March 15, 2015, when she returned to work and was not advised that she could potentially be eligible for FMLA leave. ECF No. 31-21 at 30-31.

Dorris explained that she became ill with influenza on March 11, which was a scheduled day off. She called in sick on March 13 and 14, days when she was scheduled to work. She testified by deposition that her chronic insulin resistance condition impacts her immune system and thus worsened her flu symptoms. ECF

No. ECF No. 31-21 at 57.  Although she was still sick, she returned and worked a full shift on March 15.  Dorris said when she returned on the 15th, she "explained the nature of [her] illness to Assistant Manager [Lakiesha] Hill, who only referred [her] to the personnel department, and did not provide [her] with any information about requesting FMLA leave."  ECF No. 37-1 at 4-5 (Dorris Affid.).  Dorris said she spoke with Rotesha Smith in the personnel department that day and informed her she was "still sick" and could not be seen by her doctor until Monday, March 20, 2017.  ECF No. 37-1 at 5.  Dorris stated:  "I asked Smith if there was anything further I needed to explain my absence, but Smith told me no and that I would be okay."  *Id.*  Dorris stated, "At no time did Smith explain that I could be eligible for FMLA leave because of my medical condition, and Smith did not advise me as to the process for requesting FMLA leave."  *Id.*

Dorris admitted during her deposition testimony that she did not mention her chronic insulin resistance condition to Hill or Smith when she returned to work on March 15 or on the following day when she was terminated.[4]  ECF No. 31-21 at 58-59.  She maintains nonetheless that Hill and Smith each knew of her condition,

---

[4] It is undisputed that Dorris was out with the flu on March 13 and 14, 2017.  When asked during her deposition whether she had mentioned her chronic condition to Hill or to Smith when she returned to work on March 15, she answered unequivocally, "Not on this day," and "No," and when asked whether she mentioned it on the date of her termination, March 16, she testified "Not that I recall."  ECF No. 31-21 at 58-59.  At one point in her deposition, she said that she referenced "issues with her immune system," *id.* at 95, and in her sworn affidavit, she stated vaguely that on March 15, "I explained the nature of my illness" to Hill, ECF No. 37-1.  She provided Walmart no further detail in relation to her absences in March 2017.

stating she "had brought it up over the years" "in general conversations." *Id.* at 58. Dorris stated by affidavit that after each surgery, she had explained to Hill: "because of my insulin resistance, my recovery time was greater and I was more susceptible to illness." ECF No. 37-1 at 3-4. But her surgeries were in 2015 and 2015 to early 2016. The last conversation Dorris could specifically recall in which she discussed her chronic condition was a conversation with Hill in 2015, when Dorris returned to work from gallbladder surgery. ECF No. 31-21 at 62. Dorris acknowledged during her deposition that she had never provided Walmart any medical paperwork with information about her immune system health condition,[5] ECF No. 31-21 at 59, and the medical records she provided do not include a diagnosis of insulin resistance or any reference to a chronic condition.[6]

Hill made the decision to terminate Dorris based on the accumulation of nine unexcused occurrences. She said when Dorris returned to work on March 15, 2017, she was not feeling well and referenced a sinus infection for which she was taking

---

[5] During her deposition, Dorris was asked to identify medical records documenting her condition. She stated it was in the laboratory results, which she could not read. All medical records she provided were dated after the date of her termination. ECF No. 31-21 at 59-60. She also provided a file of medical papers from 2011, which dealt with orthopedic issues unrelated to this case. *Id.* at 60-61.

[6] On March 20, 2017, Dorris visited her doctor related to her illness that caused the absences on March 13 and 14. She obtained a work release form, stating she was excused from work from March 16 through March 23, 2017. See ECF No. 31-34 at 3 (Work Release Form). The form indicated that Dorris could return to work on March 24 with no restrictions and did not reference a chronic medical condition. Dorris had been terminated on March 16 and did not provide the note to Walmart.

medication.  ECF No. 31-1 at 12.  Hill stated that Dorris did not provide any other details about her illness and had never talked to her about any medical issues or disabilities.

Dorris never sought FMLA leave for any of the nine occurrences for which she was terminated.  She explained that she did not know it was possible to apply for FMLA leave retroactively or for an absence that did not exceed three days, and she thought FMLA leave was available only for surgeries.  ECF No. 31-21 at 67.  Walmart's records show, to the contrary, that Dorris had previously requested and received approved FMLA leave on four separate occasions:  (1) to correct a deviated nasal septum in November 2012, (2) for rhinitis, a viral infection, and other complications related to her eustachian tube dysfunction in late January and early February 2013, (3) for gallbladder surgery and recovery in 2015, and (4) a hysterectomy and recovery from late 2015 into early February 2016.[7]

In this suit, Dorris contends she was entitled to FMLA leave for her absences during March 2017 because she suffers a serious health condition (insulin resistance, which impacts her immune system and exacerbates and prolongs common illnesses such as the flu).  She maintains that because she informed Walmart managers of her condition through general conversations in 2015 or early 2016, Walmart was

---

[7] Dorris's FMLA leave requests for surgeries in 2015 and 2016 were submitted and approved through Sedgwick, which became Walmart's third-party leave administrator in 2015.

obligated to notify her that she might be eligible for FMLA leave in March 2017, and that by terminating her employment, Walmart interfered with her FMLA rights or engaged in FMLA retaliation.

Walmart moves for summary judgment, arguing that Dorris has not established that she was eligible for FMLA leave, and, even assuming she has a qualifying condition, the record shows that she failed to provide sufficient notice of the condition to give rise to Walmart's obligation to further inquire as to FMLA eligibility. Walmart also argues that Dorris failed to follow its usual and customary procedural requirements and maintains there is no evidence of retaliation.

## II. Discussion

Summary judgment is appropriate where the record shows no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). A dispute of material fact is "genuine" if the record, taken as a whole, could persuade a reasonable jury to return a verdict for the nonmoving party. *See id.* at 1260; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, courts view the evidence in the light most favorable to the nonmoving party, resolving all ambiguities and drawing all

justifiable inferences in favor of that party but eschewing determinations of credibility and the weighing of evidence, which are functions properly left to a jury. *See Frederick v. Sprint/United Mgm't Co.*, 246 F.3d 1305, 1311 (11th Cir. 2001).

The moving party bears the initial burden of providing the basis for its motion and identifying materials evidencing an absence of a genuine dispute of material fact. *See Celotex*, 477 U.S. at 323; *Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 840 (11th Cir. 2000). To defeat a properly supported motion for summary judgment, the nonmoving party must "go beyond the pleadings" and identify "specific facts" in the record showing that there is a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324. This requires identifying more than "[a] mere scintilla of evidence" in support of the non-moving party's claim; "there must be enough of a showing that the jury could reasonably find for that party." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson*, 477 U.S. at 252). The self-serving statement of a litigant can defeat summary judgment if it is based on personal knowledge and is not conclusory in nature. *See United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018). Summary judgment is warranted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### A. Interference Claim

To establish a claim of FMLA interference, an employee must "demonstrate by a preponderance of the evidence that she was entitled to an FMLA benefit and her employer denied her that benefit." *Munoz v. Selig Enters., Inc.* 981 F.3d 1265, 1274 (11th Cir. 2020); *see also Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006). A showing of intent is not required because "the employer's motives are irrelevant." *Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001). Also, the plaintiff must prove that she was prejudiced by the alleged FMLA interference. *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).

To be entitled to FMLA leave based on illness, an employee must have a "serious health condition," 29 U.S.C. § 2612(a)(1)(D), which is defined as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider," 29 U.S.C. § 2611. A "chronic condition" qualifies as "continuing treatment" entitling the use of FMLA leave even for periods of absence that do not last more than three consecutive days. 29 C.F.R. § 825.115(c). Specifically:

A chronic serious health condition is one which:

>   (1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;
>   (2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
>   (3) May cause episodic rather than a continuing period of incapacity (*e.g.*, asthma, diabetes, epilepsy, *etc.*).

29 C.F.R. § 825.115(c).

When the need for leave is unforeseeable, and the employee has not previously requested FMLA leave for the particular condition, the employee does not need to reference the FMLA but must provide both the usual timely notice to the employer and, "as soon as practicable," provide notice of the facts and circumstances with "sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. § 825.303(a), (b). "Once an employee gives sufficient notice to her employer that potentially FMLA-qualifying leave is needed," the employer is then obligated to ascertain whether the absence qualifies. *Cruz v. Publix Super Markets, Inc.*, 428 F.3d 1379, 1383 (11th Cir. 2005).

Regulations require that if the employee requests FMLA leave, or the employer acquires knowledge that a leave request "may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances." 29 C.F.R. § 825.300(b). An employer's failure to notify an employee about her right to take FMLA leave consistent with the regulation, "may constitute an interference"

claim. *Munoz*, 981 F.3d 1265, 1274 (quoting 29 C.F.R. § 825.300(e)). However, absent complications, ordinary illnesses such as the common cold or flu do not qualify an individual for FMLA leave, *see* 29 C.F.R. § 825.113(d), and simply calling in "sick," without more information, "will not be considered sufficient notice to trigger an employer's obligations under the Act." 29 C.F.R. § 825.303(b); *see also Collins v. NTN–Bower Corp.*, 272 F.3d 1006, 1009 (7th Cir. 2001) (noting a mere reference to being sick "did not suggest to the employer that the medical condition might be serious or that the FMLA otherwise could be applicable").

On careful review of the arguments and the record, the Court concludes that Walmart is entitled to summary judgment. First, Dorris has not established that she suffers from a serious medical condition. While she testified that she was diagnosed with chronic insulin resistance in 2015, her unsupported statement is the only evidence. She never previously requested FMLA leave on this basis, and no medical evidence in the record supports the existence of such a diagnosis. *See Blake v. City of Montgomery, Alabama*, No. 2:19-CV-243-RAH, 2020 WL 6318504, at *6 (M.D. Ala. Oct. 6, 2020) (plaintiff's failure to present any evidence of a diagnosis of a qualifying medical condition—either before or after the need for leave arose—was fatal to the interference claim).

Second, even assuming a qualifying condition exists based on Dorris's testimony and affidavit, *see Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253

(11th Cir. 2013) (self-serving sworn statements are not to be disregarded at the summary judgment stage), the notice given must be sufficient for Walmart to have concluded that her absence was due to an FMLA qualifying reason. *See Avila v. Childers*, 212 F. Supp. 3d 1182, 1192 (N.D. Fla. 2016) (stating, "an employer's responsibility for further inquiry arises only after the employee provides a reason to believe the employee is entitled to FMLA leave"). Determining whether the employee gave sufficient notice is a mixed question of fact and law, "with the factfinder determining what notice was given and the court deciding whether such notice was legally sufficient." *Blake*, 2020 WL 6318504, at *8 (quoting *Cooper v. Walker Cnty. E-911*, No. 6:16-CV-1746-TMP, 2018 WL 3585217, at *15 (N.D. Ala. July 26, 2018)).

Viewing the facts in the light most favorable to Dorris, she did not give sufficient notice that her absences on March 13 and 14 were potentially for a serious chronic medical condition.[8] She admittedly had the flu and called in sick, but calling in sick is insufficient notice of a serious medical condition. *See Cruz*, 428 F.3d at 1385 (stating, "[f]or example, if you have brain cancer but just tell your employer

---

[8] Dorris testified that her interference claim is based only on her two absences in March 2017, and she also testified clearly that the first date she believed her FMLA leave rights were violated was March 15, 2017, when she returned to work and was not informed of potential FMLA eligibility. *See* ECF No. 31-21 at 30-31. Dorris nonetheless argues in opposition to summary judgment that "[t]here is no question that each of Plaintiff's 9 absences were caused by her underlying chronic health condition, and each should have been covered by FMLA leave," ECF No. 38 at 16. That argument is baseless and unsupported by any record evidence.

that you have a headache, you have not given the notice that the FMLA requires" (internal marks and alterations omitted)); *see also Avila*, 212 F. Supp. 3d at 1192 (finding insufficient a vague doctor's note and knowledge that the employee was sick); *Andrews v. CSX Trans. Inc.,* 737 F. Supp. 2d 1342, 1351-52 (M.D. Fla. 2010) (phoning in "sick" or providing a doctor's note for "unspecified ailments" is insufficient). Even accepting as true Dorris's vague affidavit statement that she advised Hill of "the nature of her illness," this without more does not rise to the level of notice required to suggest an FMLA-qualifying condition. At most, Dorris had the flu, she called in sick, she possibly reported a sinus or immune "issue" to Hill, and she returned to work the third day and worked an entire shift.[9] There is no evidence that she mentioned a chronic medical condition to Hill or Smith either on the day she returned or the day she was terminated.

Dorris argues that her managers knew of her serious condition because in 2015 or possibly early 2016 after returning from surgery, she had referenced her chronic insulin resistance condition in general conversations with Hill or Smith. The Court finds this inadequate. It would be unreasonable to consider a casual conversation in 2015 and/or early 2016 in relation to her surgeries and a year before the absence that

---

[9] There is a dispute in that Hill said Dorris referenced a sinus issue and Dorris said she advised Hill of the "the nature of her illness," or an issue with her immune system, but this dispute is not material because neither version suggests that Dorris referenced a chronic, potentially qualifying serious insulin resistance condition.

caused her termination, as adequate notice. *See Collins*, 272 F.3d at 1009 (granting summary judgment to employer despite the fact that the employee "had mentioned the [serious medical] problem to supervisors early in 1997, a year before the absence that led to her discharge"). Dorris had never before taken FMLA leave for the insulin resistance condition, and she provided Walmart no information that could link her absence for the flu to that condition.

Dorris cites one case in which a jury question was found on an interference claim where notice was at issue. *See Willmore-Cochran v. Wal-Mart Assocs., Inc.*, 919 F. Supp. 2d 1222, 1247-49 (N.D. Ala. 2013). But, the case is distinguishable. While there was an issue in *Willmore-Cochran* of whether the plaintiff gave adequate notice of an FMLA-qualifying condition as a reason for her absence,[10] the court expressly found it unnecessary to resolve the question. The court concluded instead that a question of fact existed on the plaintiff's alternate claim that any deficiency in her notice was excused by Walmart's overarching failure to provide employees with general notice that the FMLA provides intermittent leave. *See id.* at 1248-49. That precise claim has not been raised in this case nor could it be sustained on this record because, despite Dorris's testimony that she was unaware of the possibility of intermittent leave, the record clearly shows that Walmart's FMLA

---

[10] The plaintiff in *Willmore-Cochran* suffered from Irritable Bowel Syndrome, and her supervisors were aware of the condition but she did not expressly reference it when leaving early from her shift. 919 F. Supp. 2d at 1247.

policy, on which Dorris received training, informed employees of the general availability of intermittent leave under certain circumstances. The sole issue is whether Dorris gave notice sufficient to suggest a "potentially FMLA-qualifying reason" which in turn would give rise to Walmart's obligation to give individual notice. *Cruz*, 428 F.3d at 1386 (quoting *Gay v. Gilman Paper Co*., 125 F.3d 1432, 1436 (11th Cir. 1997)). The Court concludes she did not. Walmart is therefore entitled to summary judgment on the interference claim.

B. **Retaliation Claim**

To establish a claim of retaliation based on FMLA rights, the plaintiff must demonstrate that the employer "intentionally discriminated against h[er] in the form of an adverse employment action for having exercised an FMLA right." *Jones v. Gulf Coast Health Care of Delaware*, LLC, 854 F.3d 1261, 1270 (11th Cir. 2017) (quoting *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001)). The requires proof that the employer's actions "were motivated by an impermissible retaliatory or discriminatory animus." *Id.* (quoting *King v. Preferred Tech. Grp*., 166 F.3d 887, 891 (7th Cir. 1999)). The burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies to FMLA retaliation claims based on circumstantial evidence. *See id.* at 1271.

Walmart asserts that Dorris expressly disavowed any claim based on retaliation in her deposition by testifying that she was not terminated for taking FMLA leave in 2015 and that she was not claiming she was treated differently than others because she took FMLA leave.  *See* ECF No. 31-21 at 37-38, 65.  The Court agrees.  Moreover, Dorris's response to the summary judgment motion makes no argument regarding the retaliation claim, thus the claim appears to be waived, and she presents no record citation or any evidence to raise a question of fact on the issue.  Thus, Walmart is entitled to summary judgment on the retaliation claim.

Accordingly, Walmart's Motion for Summary Judgment, ECF No. 33, is **GRANTED**.  The Clerk is entitled to enter judgment accordingly, tax costs against the Plaintiff, and close the file.

**DONE AND ORDERED** this 28th day of March 2021.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**